IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**DERRICK GATES, et al.**                                                       **PLAINTIFFS**

v.                                                             CAUSE NO. 1:22-cv-356-LG-RPM

**CITY OF BILOXI, MISSISSIPPI**                                          **DEFENDANT**

## MEMORANDUM OPINION AND ORDER
## ADOPTING REPORT AND RECOMMENDATIONS

**BEFORE THE COURT** are the [17] Report and Recommendations entered in this matter by Magistrate Judge Robert P. Myers, Jr. on January 3, 2023. In the Report and Recommendations, the Magistrate Judge recommends that the Court grant a [12] Motion to Enforce Settlement filed by Defendant, City of Biloxi, Mississippi. Plaintiffs filed [18] Objections to the Report and Recommendations. After review of the submissions of the parties, the record in this matter, and the applicable law, the Court adopts the Report and Recommendations in full and grants the relevant Motion.

### BACKGROUND

The [1] Complaint in this matter, filed in this Court on December 30, 2022, was brought by several "first-responder", firefighters employed by Defendant, the City of Biloxi. (*See* Compl. ¶ 35, ECF No. 1). Plaintiffs allege that Defendant is liable under the Fair Labor Standards Act (FLSA) and for breach of contract for refusing to pay them longevity pay, and overtime pay. (*Id.* ¶¶ 36-56). The case was resolved at a settlement conference held May 3, 2023. As part of the terms of the settlement, Defendant agreed to reinstate longevity pay to Plaintiffs and all

firefighters beginning October 1, 2023, and that such longevity pay "would be paid going forward," rather than as "a back payment." (Tr., at 3:14-24; 6:24-7:3, ECF No. 14-1). The settlement was made contingent upon the approval by the City of Biloxi's city council.

On May 17, 2023, Defendant advised the Court that the settlement terms set forth in the transcript had been approved by the city council during an executive session. Separately, Plaintiffs' counsel approved the settlement terms as recorded in a Settlement Agreement and Release prepared by Defendant. (*See* Settlement Agmt., ECF No. 12-1). The Agreement provided for longevity pay as follows:

> Biloxi will reinstate longevity pay going forward pursuant to City Ordinance 15-1-14 to not only the Plaintiffs but to all full-time city employees who qualify for longevity pay as of on October 1, 2023. The amount of available longevity pay going forward will be calculated by the number of years of service as of October 1, 2023. All other provisions of the Ordinance will remain in effect as of October 1, 2023.

(*Id.* ¶ 1(a)). The city council then adopted the Agreement on May 23, 2023, by resolution, which was approved by the mayor on May 26, 2023. (*See* Resolution, ECF No. 12-3).

On August 24 and 30, 2023, the Magistrate Judge held two telephonic status conferences regarding the status of settlement. (*See* Minute Entry, 8/24/2023; Minute Entry, 8/30/2023). At these teleconferences, plaintiffs' counsel "advised the Court that while twenty-five of the Plaintiffs had signed the Settlement Agreement and Release, ten of the Plaintiffs were refusing to sign the Agreement." (*See* Mot. Enforce Settlement ¶ 3, ECF No. 12).

Defendant filed the instant [12] Motion to Enforce Settlement on September 1, 2023, submitting that "the parties did reach an enforceable settlement agreement" and requesting that the Court give the parties resisting settlement "thirty (30) days to show cause why this case should not be dismissed." (*Id.* ¶ 3). Defendant also asks that the Court enforce the Settlement Agreement and dismiss this case with prejudice. (*Id.*).

In opposition, Plaintiff claimed that "the parties agreed that Defendant would pay longevity pay for the entire year of 2023 and 2024," but that Defendant later changed its position to granting longevity pay "from October to December 2023." (*See* Pl.'s Resp. Def.'s Mot. Enforce Settlement ¶ 4, ECF No. 14). Plaintiffs "request[ed] that the settlement be set aside so the case can continue to be litigated as there was not a meeting of the minds on all the terms of the agreement." (*Id.* ¶ 23) (citation omitted). They alternatively "request[ed] that the Court conclude that Plaintiffs' interpretation on longevity is the correct interpretation," due to the rule that ambiguities are construed against the draftsman. (Pl.'s Resp. Def.'s Mot. Enforce Settlement ¶ 24, ECF No. 14) (citation omitted).

The Court [16] referred the matter to the Magistrate Judge on October 30, 2023. On January 3, 2024, the Magistrate Judge filed a [17] Report and Recommendations, finding that there was a meeting of minds as to the settlement agreement, which fully crystallized after Plaintiffs' counsel's formal approval of the Settlement Agreement and its adoption by the Biloxi city council and mayor. (*See*

R. & R., at 3-6, ECF No. 17). Plaintiffs filed their [18] Objections on January 16, 2024. (*See generally* Obj., ECF No. 18).

## DISCUSSION

Plaintiffs have objected to a Report and Recommendations issued by the Magistrate Judge. A party that files a timely objection is entitled to a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which specific objection is made. *United States v. Raddatz*, 447 U.S. 667, 673 (1980); 28 U.S.C. § 636(b)(1). The objections must specifically identify those findings or recommendations to which objections are being made. The district court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

### I.     Motion to Enforce Settlement

The Fifth Circuit "ha[s] long recognized a district court's 'inherent power to recognize, encourage, and when necessary, enforce' parties' settlement agreements." *Wise v. Wilkie*, 955 F.3d 430, 434 (5th Cir. 2020) (quoting *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994)). "'Settlement agreements are highly favored in the law and will be upheld whenever possible.'" *Mass. Cas. Ins. Co. v. Forman*, 469 F.2d 259, 261 (5th Cir. 1972) (quoting *D.H. Overmyer Co. v. Loflin*, 440 F.2d 1213, 1215 (5th Cir. 1971)). The standard of review used to determine whether a district court erred in enforcing a settlement is abuse of discretion. *Deville v. United States*, 202 F. App'x 761, 762 (5th Cir. 2006) (unpublished).

"Questions regarding the enforceability or validity of such agreements are determined by federal law—at least where the substantive rights and liabilities of the parties derive from federal law." *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984). This Court exercised federal question jurisdiction in this case due to the presence of federal Fair Labor Standards Act (FLSA) claims. As such, federal law governs the validity or enforceability of the settlement agreement. *See Farner v. CHCA Bayshore, L.P.*, Civ. No. 3:22CV369, 2023 WL 5528611, at *2 (S.D. Tex. Aug. 28, 2023) (applying federal common law to determine enforceability of settlement of FLSA claim). However, "'[a]lthough federal courts possess the inherent power to enforce agreements entered into in settlement of litigation, the construction and enforcement of settlement agreements is governed by the principles of state law applicable to contracts generally.'" *Sundown Energy, L.P. v. Haller*, 773 F.3d 606, 611 (5th Cir. 2014) (quoting *E. Energy, Inc. v. Unico Oil & Gas, Inc.*, 861 F.2d 1379, 1380 (5th Cir. 1988)).

## II.     Plaintiffs' Arguments

Plaintiffs argue that the Settlement Agreement and Release only concerned when longevity payments would commence, October 1, 2023, and not the time to be included in calculating the longevity payment. In so arguing, Plaintiffs invoke the City of Biloxi's ordinance on the issue, which provides that eligible current employees may elect to receive longevity pay biweekly or annually. (*See* Ordinance No. 2157, ECF No. 14-2). Plaintiffs report that all named Plaintiffs have elected to receive their longevity pay annually. (*See* Obj. ¶ 6, ECF No. 18). For such

employees, who elect annual longevity payments, the payment is included "in that employee's salary payment for the first pay period of the month of December." (Ordinance No. 2157, at 2, ECF No. 14-2). According to Plaintiffs, this annual payment is based on "all the eligible months in that 12-month period," and so the whole of the period should be included in the annual payment. (Obj. ¶ 14, ECF No. 18).

Defendants rely upon the settlement terms as explicitly recited into the record. These terms characterize the longevity payment as "going forward" rather than as a "back payment," so the longevity payment only applies to the three months between October and December. (*See* Tr., at 6:24-7:3, ECF No. 14-1). Plaintiffs respond that, despite its recitation into the record at the settlement conference, this was not clarified in the Settlement Agreement and Release drafted by Defendant, which the parties approved. (Obj. ¶¶ 12-13, 17-19, ECF No. 18). Further, Plaintiffs also deny that the annual calculation is "back pay" at all, because the longevity payment is "[a] later owed payment" on "all the eligible months in that 12-month period." (*Id.* ¶ 14).[1]

The Magistrate Judge, reviewing this issue, noted that the settlement agreement did not make a distinction between employees who received longevity pay biweekly and those who received them annually. (*See* R. & R., at 7 n. 6, ECF No. 17). He reasoned that "Plaintiffs' argument, if accepted, would result in

---

[1] In contrasting the parties' characterizations of "a back payment," it is significant to note that "backpay" commonly refers to "accrued but uncollected wages or benefits." *See Backpay Award*, Black's Law Dictionary (11th ed. 2019).

inconsistencies for those receiving longevity pay annually versus those receiving longevity pay biweekly." (*Id.*). Plaintiff argues that this resulted in a "confusion" or "ambiguity" which prevented a meeting of the minds, or should be construed against Defendant, the draftsman. (Obj. ¶¶ 16-19, ECF No. 18).

In resolution of this issue, the Court notes that the settlement as recited into the record was only made contingent on approval by the Biloxi's city council. Given that Biloxi's city council later approved the settlement, the agreement became binding on the parties. "Under federal common law, 'a settlement agreement is a contract.'" *Farner*, 2023 WL 5528611, at *2 (quoting *Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 940 (5th Cir. 1992)). "Thus, 'a binding settlement agreement exists where there is a manifestation of mutual assent, usually in the form of an offer and an acceptance.'" *Farner*, 2023 WL 5528611, at *2 (quoting *Chen v. Highland Cap. Mgmt., L.P.*, No. 3:10CV1039, 2012 WL 5935602, at *2 (N.D. Tex. Nov. 27, 2012)). Under federal law, settlement agreements must be entered into voluntarily and knowingly. *Mary Harmon v. Journal Publ'g Co.*, 476 F. App'x 756, 757 (5th Cir. 2012) (unpublished). "[S]ettlements are not required to be reduced to writing and oral settlement agreements are enforceable." *Id.* "Additionally, under federal law, '[o]ne who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity.'" *Id.* (quoting *Mid-South Towing Co.*, 733 F.2d at 392).

"'[I]t is well-established that an oral settlement agreement is binding on the parties, particularly when the terms are memorialized into the record.'" *Palczynski*

*v. Dep't of Energy*, 374 F. App'x 984, 985 (Fed. Cir. 2010) (citation omitted).  In fact, "[a] settlement stated on the record is 'one of the strongest and most binding agreements in the field of law' and is thus entitled to substantial deference.'" *Medinol Ltd. v. Guidant Corp.*, 500 F. Supp. 2d 345, 354 (S.D.N.Y. 2007).  As noted by federal courts in this district, "[a] meeting of the mind[s] and acceptance of an agreement 'could be inferred where the parties to a settlement announce in court that an agreement has been reached and subsequently read the agreement into the trial court record.'" *Estate of Thomas v. U.S. Fid. & Guar. Ins. Co.*, No. 3:02CV1490-WS, 2006 WL 839540, at *2 (S.D. Miss. Mar. 30, 2006) (citation omitted); *Estate of Alexander by and through Alexander v. DLJ Mortgage Capital, Inc.*, No. 3:15CV293-TSL-RHW, 2017 WL 9512369, at *2 (S.D. Miss. Aug. 28, 2017) ("It is elementary that when two parties come to a meeting of the minds, announce to the trial court that an agreement or settlement has been reached, and then recite the details of that agreement to the court on record, a settlement has been formed.") (citation omitted).  "For a settlement to exist, it is not necessary that a release be signed." *Volland v. Principal Residential Mortg.*, No. 1:08CV696-LTS-RHW, 2009 WL 1293547, at *2 (S.D. Miss. May 7, 2009).

"[A] district court may exercise its discretion to enforce a settlement agreement where one party to a suit has initially agreed to a settlement but later refused to execute a formal agreement reciting the terms of the settlement." *Weaver v. World Fin. Corp. of Tex.*, No. 3:09CV1124-G, 2010 WL 1904561, at *2 (N.D. Tex. May 12, 2010) (citing *Daftary v. Met. Life Ins. Co.*, 136 F.3d 137 (5th Cir. 1998) (per

curiam)). Here, the parties through their retained counsel announced the settlement, and the terms were recited into the record. It is the recorded recitations that control. Therefore, the settlement agreement is enforceable as recorded in the transcript at the close of the settlement conference, regardless of any alleged omissions contained in a later memorialization of the parties' agreement.

The content of the parties' settlement agreement is determined by application of state law. *Sundown Energy, L.P.*, 773 F.3d at 611. "[A] settlement agreement is treated as a contract under Mississippi law." *Bogy v. Ford Motor Co.*, 824 F. Supp. 2d 733, 739 (S.D. Miss. 2011) (citing *McManus v. Howard*, 569 So. 2d 1213, 1215 (Miss. 1990)). "When interpreting a contract, a court first determines, as a matter of law, whether it is ambiguous." *Bogy*, 824 F. Supp. 2d at 739 (citing *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 751 (Miss. 2003)). "If the contract is found to be unambiguous, it must be enforced as written." *Bogy*, 824 F. Supp. 2d at 739 (citing *Miss. Transp. Comm'n v. Ronald Adams Contractor, Inc.*, 753 So. 2d 1077, 1087 (Miss. 2000)).

Here, the disputed language, as stated into the record, was that "the longevity pay would be paid going forward," and that "[i]t's not a back payment, but it is a – the reinstatement essentially for all city employees going forward." (Tr., at 6:24-7:3, ECF No. 14-1). The Settlement Agreement and Release provides for longevity pay as follows:

> Biloxi will reinstate longevity pay going forward pursuant to City Ordinance 15-1-14 to not only the Plaintiffs but to all full-time city employees who qualify for longevity pay as of on October 1, 2023. The amount of available longevity pay going forward will be calculated by

the number of years of service as of October 1, 2023. All other provisions of the Ordinance will remain in effect as of October 1, 2023.

(Settlement Agmt. ¶ 1(a), ECF No. 12-1).

"A settling party . . . may not assert ambiguity to undo the settlement when the record contains an agreement that is clear on its face." *Medinol Ltd.*, 500 F. Supp. 2d at 353. Under Mississippi law, "settlement agreements are enforced as a matter of contract law and 'courts will not rewrite them to satisfy the desires of either party.'" *Estate of Alexander*, 2017 WL 9512369, at *2 (quoting *Chantey Music Publ'g, Inc. v. Malaco, Inc.*, 915 So. 3d 1052, 1055 (Miss. 2005)). The terms as read into the record must be enforced. *Estate of Alexander*, 2017 WL 9512369, at *2 (citing *Williams v. Winona Manor Healthcare, LLC*, No. 4:13CV225-SAA, 2014 WL 5090620, at *4 (N.D. Miss. Oct. 9, 2014)).

In the opinion of the Court, the statements of the parties memorialized in the Court record constitute a settlement agreement, essentially a contract both unambiguous and enforceable. Here, the longevity payment would be reinstated on October 1, 2023, and it would not apply retroactively or reflect any allegedly accrued wages or benefits. As stated in the Court record, eligibility would accrue going forward.

Therefore, having conducted a *de novo* review of the record, and considered the objections and arguments of counsel, the Report and Recommendations will be adopted by the Court, the Motion to Enforce Settlement will be granted, and the case will be finally dismissed.

-11-

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [17] Report and Recommendations are **ADOPTED** as the opinion of this Court.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [12] Motion to Enforce Settlement filed by Defendant, City of Biloxi, Mississippi, be **GRANTED.** The matter being settled, the case is therefore **DISMISSED.**

**SO ORDERED AND ADJUDGED** this the 25th day of January, 2024.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE